May it please the Court. My name is Colin Prince on behalf of Timothy Binford. May I reserve two minutes for rebuttal? Yes. Please be informed that the time remaining is your total time that you have. Thank you, Your Honor. All right. We have two issues before the Court. The first is whether Mr. Binford possessed a firearm in connection with a separate felony offense and the second is whether Washington harassment with threats to kill is a predicate offense. Is that still an issue? Yes, Your Honor. Dr. Worley? Yes, Your Honor. Why? That would be my question. I read the briefing and the case to indicate that this is a closed issue now. We filed both the government and Mr. Binford filed 28 J letters raising the Valdivia issue. As we see this, well, there's a couple of responses here. Are you talking about Davila or Davila? Valdivia. Valdivia Flores. Okay. Thank you. Thank you. Thank you. Thank you. Illustrious judge. I don't know. Go ahead. Go ahead. I don't know about using that as authority. How do you get there with all due respect to its author? How does that help you? Valdivia held that in comparison Washington accomplice liability and federal accomplice liability, Washington accomplice liability is over broad. It is imputed into all Washington criminal offenses and essentially I'm making the government's argument. I wrote the dissent in that one. Judge Worley did write the dissent, which I read most recently. Go ahead. I'm still listening and I'm still unconvinced. I am making the government's argument from Valdivia. The government in Valdivia and the court recognized that if Washington accomplice liability is over broad and it's imputed into all Washington offenses, then the outcome of that is essentially all Washington offenses are over broad. I did misunderstand your argument. Thank you for the clarification. So there's a couple of... So under that case and this was my... Obviously I was in the dissent and I recognized that, but my problem is that then that means no Washington conviction can ever serve as a predicate offense. That's correct, Your Honor. Okay. That was the government's argument in Valdivia. I think the court, the opinion called it the pragmatic argument from the government is that it has this effect and the panel... Well, that's true for every federal offense. I mean, automatically included under Section 18, U.S. Code Section 2 is accomplice liability, right? So I don't get that, that just because that's included in the statutory scheme, it necessarily makes the underlying offense over broad. Because I thought we were supposed to be looking at the underlying offense, which was not accomplice liability or aiding and abetting. I just don't know how you get there. But I lost that argument. Yes, Your Honor, I appreciate that. I lost it then. Luckily for me. But Valdivia, that was the outcome of Valdivia, and I wanted to update the court. I had a chance to look at the docket. The government has filed two motions to extend time for rehearing on Bonk. I expect that's going to go up on Bonk. I would tell the court we also are planning a cert petition in Worley. But I don't see actually Worley and Valdivia in conflict because if the court looks at Worley, the Worley court did not hear the Valdivia issue. It was raised in a 28-J letter after Valdivia came out. So Worley was closed at the time the Valdivia argument was raised in that case. So the Worley court never considered what was going on. But do you think Worley helps you? Worley, I think, is sort of unimportant to us in this case. And that is because. How is it unimportant? Because Valdivia is really what is controlling, and Valdivia was not in effect. Valdivia was not raised with the Worley court. But that's the problem. Well, it certainly doesn't. Right. I think we understand your argument now. Forgive us if it, and maybe it was my fault that took us a while to get there, but I think I understand this point now. Can you go to your next argument, because this is the one that I've got notes all over my paper about. Thank you, Your Honor. Yes. The question of the firearm I'm in connection with. So the district court erred by imposing this plus-4 enhancement. They added about three years of sentencing exposure to Mr. Binford's range. Why? Why did the district court err? Yes. Because the factual record is not supportive that there was anything more than mere proximity. Well, what does she need to have? She's got to find by preponderance, right? Correct, Your Honor. And I don't think she used those words, but you're not contesting that, are you? No. Okay. So then there's this kit of items. Yes, Your Honor. There is a baggies, emptied baggies that contain residue, a tourniquet, syringes. There's what I think both sides agreed are burglar's tools. But she also relies on identity theft, right? Correct, Your Honor. Okay. And there's a credit card, and it's not your client's credit card. Correct. So what's wrong with her enhancement here if she decides that these items in the gun were used in the furtherance of the identity theft? So virtually, not virtually, every court to consider this has held that mere possession, mere proximity of a gun to other unlawful items is not enough. Okay. So the guideline, I was looking for a case law that would convince me that she has to decide that this other felony was committed, albeit by a preponderance. Yes. As opposed to somebody was planning to commit. And that's why it seemed to me that burglary was a little tougher, because although the guideline uses the word used past tense, and I think that means you did it, right, as opposed to planning, the burglary tools could be more of a planning, but with the credit card that doesn't belong to your client in the materials, then why isn't that sufficient to show by a preponderance that the gun was used in the furtherance of the identity theft? That is another offense that was actually committed. So the first answer is we don't know when the identity theft was committed. We don't know if Mr. Binford put the gun into the bag moments beforehand. What difference does that make? Well, you have identity theft, which presumably would have been committed by using the credit cards at some other date, which is separate from simply possession of the credit cards. It's not identity theft to just simply have someone else's stolen credit card. Okay, so this goes back to what the judge had defined is that this gun was used in connection with another offense, and I think by implication she found it by a preponderance, and she found that it actually occurred and that the guideline requires that. Although, correct me if I'm wrong, I couldn't find case law specifically telling me that she has to decide that this other offense occurred, but isn't the presence of the credit card that doesn't belong to your client sufficient to get over the hurdle to show that that offense was committed? No, Your Honor. Why not? So, again, this comes back to what we have in the facts are that Mr. Binford is found in possession of stolen credit cards, stolen gift cards, and the gun. The Fifth, Sixth, and Eighth Circuits and this circuit have all held that what we have here is mere proximity, and what the Sixth Circuit really talked about in a case called Seymour, which I believe – I'll find it for you in a minute, Your Honor. They discussed what's called Fortress Theory, which is the theory that it typically comes up in drug possession cases where a defendant is found with drugs in his possession and a firearm, and the court can find that the firearm facilitated possession of the drugs because you, you know, went out of the house with a gun and with drugs, and that emboldened the possession of the drugs, but it's not a necessary finding. In drug trafficking under Application Note 14B, it's automatic. If you're – if the other offense is drug trafficking and you're caught in possession of a firearm, the enhancement applies. If it's drug possession, we are under Application Note 14A, which is the facilitation standard, and courts can or may not apply it. We're here in, obviously, a residue case and stolen credit cards. What we don't have, number one, is a ruling from the court. When did identity theft happen, and how did the gun facilitate that identity theft? All we have in this case, and the reason the government has to lose, is because we have a bag with unlawful items in it and a gun. Well, the unlawful items were consistent with burglary or identity theft. And there was some – there were statements made that could be relied upon to connect your client to burglary or robbery in a more layman's term. There's a scary mask. There is a mask. A psychological mask, right? So why wasn't that enough that the scary mask was used to rob somebody? Or, again, the standard is by a preponderance. Correct. So at this point, I believe – and I'm running out of my time here – we're simply making a speculative leap that the other – Well, the district court made a leap, and you're trying to argue that was clearly erroneous. It is contrary to, as I read it, all of the other – all of the other case law from the Fifth, Sixth, and the Eighth Circuits who have said you have to identify what the other felony offense is. The statements from the witness most certainly do not say that Mr. Binford was seen burglarizing anything or robbing anything. There's the Casey's Restaurant gift cards. There's zero statements in the record that he possessed a gun while stealing gift cards. There are zero statements in the record that he possessed a gun while stealing stolen credit cards or using those credit cards for identity theft. There is nothing – respectfully, the government has argued drug trafficking in their response brief, and there is absolutely nothing supporting that, and the district court didn't even rule on that. So I think that – She didn't rely on that. What's the appropriate standard of review? The appropriate standard of review to resolve this would be abusive discretion, and without any facts in the record to link the gun to the actual other offenses, the court has abused its discretion. All right, counsel. Thank you. We'll give you one minute for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honor. Good morning. May it please the Court, my name is Tim Ohms. I'm here representing the government from U.S. Attorney's Office in Spokane. So just to touch upon the Valdivia Flores issue briefly, one thing that I wanted to point out as I thought about the issue, we have 77 pages of briefing, combined briefing in the case, and none of it addresses Valdivia Flores, so it's kind of hard to come in and argue it. But I had thought about it, and I think one of the things that's most important in terms of distinctions is that in Valdivia Flores, the case involved drug trafficking for which there was a federal analog, and the case, the court makes a comparison between the state crime and the federal analog and decides that the state crime was broader because it imported this aiding and abetting. Well, the problem is that the panel did not even address the drug statute. It focused on the aiding and abetting statute. But in this case, there isn't a federal analog. The underlying offense was harassment with threat to kill, and the way it becomes important to sentencing in this case is through the elements or the force clause, not through comparing it to a federal analog but comparing it to the force clause. And in Worley, the court determined that the underlying crime meets the criteria of the force clause. The mens rea for that crime is knowledge. The court found that that was a sufficient mens rea. And that came out after Valdivia, right, Flores? Well, it was... Was it about the same time? It was about the same time, and then there was a motion filed in Worley for reconsideration based on Valdivia Flores. Right. So the panel was aware of the potential effect, if any, of Valdivia Flores and nevertheless ruled the way it did in Worley, did not amend or withdraw the opinion. If I recall correctly, and it's in my response to the 28J letter, I believe that one of the judges in Valdivia Flores was also on the... Judge O'Scanlan was on both panels. Was on the panel.  But... So what's required under the force clause was... The mens rea that was required isn't greater than knowledge. The aiding and abetting provision, which allows a conviction based on knowledge, doesn't really broaden that. So there's a clear distinction here in terms of what the court would be doing. It's not comparing a state crime to a federal analog. It's comparing a state crime to the force clause. And in this case, the aiding and abetting provision doesn't broaden it. So that's one point of comparison. I'm not going to go on further, but... Yes, could we move to the possession of firearm, which in my view is more problematic for the government? Well, the court made its determination based upon the total circumstances that it saw. Which crime in particular did the district court connect the possession of firearm with? I don't know that she was that specific, but I think that she focused on the identity theft and burglary. In this case... Does there have to be a specific finding by the court as to what crime the firearm was possessed in connection with? Does there have to be a finding by the court? I'm not aware of any requirement for that. Do you know of any case law where it hasn't been done? I don't think I've ever seen it not matched up. And I don't really see there's a match up here. She mentions both. I think in most cases it's implicit in the facts. Implicit or explicit? Implicit because it's a drug trafficking case and you have the firearm with the drugs for whatever reason. It might not be charged as a 924C count. But my point is in this case there was an abundance of material to commit all sorts of crimes. It's not just burglary. And do you agree? Forgive me for interrupting, but for starters, do you agree that she has to have found by a preponderance that the other felony was committed? No. Past tense. But the guideline says used. Well, I think under comment 14A, the comment used the language that it had the potential to facilitate. So in other words. Yes, potential to facilitate, but I'm trying to get at whether or not a finding, or even an implied finding, that this was sufficient, but perhaps still in the planning stages would suffice. And my read of the guideline, and I don't see case law on this point, but my read of the guideline is they're really talking about another offense that was committed. Well, he was arrested by the state for commercial burglary. That's how the whole search occurred. I understand that, but I'm just trying to make sure that I understand your argument. And it sounds like your argument is he didn't have to, she doesn't have to have found that by a preponderance that he actually committed this other crime, just that the gun would have facilitated the commission. Yes. Do you have any authority for that? I cited to the comment in my brief. Yes, okay. Thank you. I think that, I don't think the standard is that we have to be able to prove the other crime. It's not a dual prosecution. Right, and again, I mean, I read the commentary as talking about used past tense, and the judge's findings, I think, maybe they're not articulated exactly this way, I think she found by preponderance that he committed one of those two other offenses, which gets us all the way back to Judge Rawlinson's question. I think she talked about identity theft, and I think she talked about burglary. Both. And there's evidence to support other criminal conduct as well, but with the burglary, this is an individual who had, if you count them all up, including the 13 counts of robbery for each who was convicted in Canada, two in the state court, one in federal court, had 16 prior robbery convictions in one jurisdiction or another. In this case, he had the firearm with the blanks, with the mask, with the baton, the push dagger, the handcuffs. I think that the court, in essence, was looking at this, and the defense themselves referred to the material in the bag because they did not want the jury to hear about the material in the bag, and for the most part, the jury didn't. They referred to that material as a burglary 101 kit in their briefing, and that was repeated over and over. So the defense understood what this was and what the implications of the jury hearing this would be, is that they would draw the inference that these things are here for a reason. They're together, they're combined for a reason. The defendant was under investigation for the commercial burglary, which led to the arrest. I think the court drew the conclusion that these . . . it connected these dots together and drew the conclusion that it felt was reasonable based upon the total circumstances of this case. And then, of course, it issued a sentence, a final sentence, that was within the guideline range, even if the four-level increase had not been given. Counsel, may I ask you, what evidence in the record was there that permitted an inference that a gun facilitated or potentially facilitated the crime of identity theft? I don't think that there is, other than the whole milieu of what's in the bag. But just being in the bag doesn't get you there, does it? I think in this case it does. When you look at the total circumstances. This defendant is . . . the judge drew the inference, I believe, that this defendant was committing multiple crimes. The stolen credit card tells us that maybe he's getting ready to commit identity theft. But in order to convict him of identity theft, or even by preponderance to decide that he actually committed that crime, if that's what's required, you'd need more than just that he's got somebody else's credit card. That might get you robbery or burglary. It was multiple cards, and the judge . . . If he hadn't done anything with those cards, you don't get to identity theft. There's no indication that he's got . . . there's not the visa bill. There's not indication or receipt that he used the cards. If we could connect this gun to a prior crime with specificity, I'm sure he would have been . . . But it has to be a specific crime. I'm sure he would have been convicted, I mean, or prosecuted for that. But isn't your much stronger crime burglary and not identity theft? I can't see any evidence that he used the . . . that was before the district court, but I'm inviting you to tell me if I'm wrong, that he actually used the cards, counsel. So it just seems to me much stronger to be arguing burglary. Well, there was evidence that he was using gas cards, but I'm not sure what came in in terms of the record. The burglary . . . Do we have evidence before us that he was using somebody else's gas card? I don't recall the record on that point. Okay. So, counsel, help me. I'm sorry. We don't know when the burglary . . . We know when one of the burglaries occurred, but we don't know whether he was carrying the firearm during that burglary either. So we know that there's evidence that he's committing burglaries. He's under investigation for this prior commercial burglary. He's got these burglary tools in conjunction with the firearm. That's what we have, and the judge drew the inference based on that. Well, counsel, on page 61 of the record, line 9, it appears that the court is focusing on the identity theft as opposed to the burglary because the court says, well, I think that the crime that was potentially committed in conjunction with the firearm was, in fact, the identity theft. So is there any similar language from the court that focuses in on the burglary? I don't think the court was clear with it. That kind of concerns me because I think to the extent that the court focused on one of the crimes, it was identity theft as opposed to burglary. Well, line 24 makes reference to burglary as well. Yeah, but it doesn't say that it was committed in conjunction with the firearm. So that language is . . . A lot of activities are consistent with burglary, so . . . Well, she was more specific in terms of identity theft than she was with burglary. To me, it never connects the burglary with the firearm. So I have some difficulty even getting to the burglary. Well, it's an abuse of discretion standard in terms of what the trial court determined. I think the trial court considered all the facts that were before it and exercised its best judgment. We understand your argument. Any questions? Thank you. All right, thank you, counsel. Any further rebuttal? So I think the court has hit on exactly the right issue. And I think I would just say this obviously goes beyond Tim Binford. This in connection with enhancement is used in felon possession cases constantly. And so we're looking at Mr. Binford getting an additional three years of time for something he was never charged with, never taken to a jury, seen witnesses, subpoenaed, anything. So I think that what this court should rule is pretty much consistent with the Fifth, Sixth, and Eighth Circuits, which is that when we're doing this on a preponderance of the evidence standard at sentencing, the district court needs to say, here's what the felony offense is, perhaps some specifics to some reasonable degree. Here's when it happened. And how did the gun facilitate it? Because what we're lacking in this record is any kind of connection between identity theft and the gun. Because what we're getting away from is the facilitation standard. It's not just that they're possessed at the same time. All the courts are saying that this mere proximity, it's just not enough to have them at the same time. To add this enhancement and add this amount of prison time to people's sentences, the court has to find that having the gun facilitated. Go ahead. Or have the potential to facilitate. Well, is it really hard to figure out the potential connection, particularly for burglary? Because it's real easy to me to figure out the connection. It is. Particularly when she said that the district court said, again, it's all, I think, on the same page in the transcript to Judge Clifton's point, where there's multiple witnesses. I heard testimony of people seeing him going into pawn shops to pawn these items. Yes, Your Honor. So there was the Casey's gift cards, and there is zero evidence in the record that he possessed a gun when going into that restaurant and taking gift cards. For all we know, he's got his gun at home. He walks into the Casey's, he eats dinner, and he picks up the gift cards on his way out. There is zero evidence in the record that he had a gun when committing that offense. There were some references to jacking people. There is zero evidence in the record that he possessed a gun. When this happened, where it happened, who the victims were, we don't know any of that. But there is no evidence that he had a gun. So can you go back to the, I keep trying to get everybody to go back to the guideline and tell me where's the evidence, or I'm sorry, where's the language in the guideline or in the commentary that talks about whether this gun that had the potential to facilitate, because I think that's the language in the guideline. Yes. Where does the guideline require that the court find that the defendant actually went out and committed that offense using the gun as opposed to the gun has the potential to facilitate? Is Your Honor talking about the temporal problem? I'm trying to figure out exactly what she had defined. And I think you're focusing on a temporal problem because you keep talking about we don't know when the burglary occurred, we don't know when the identity theft occurred. But the language in the guideline talks about potential to facilitate, right? Yes, Your Honor. If the defendant used or possessed any firearm or ammunition in connection with. And that's what I read is I go directly back to the body of the actual guidelines as used or possessed in the past tense. I think we'd be getting into dangerous waters asking district courts to predict future behavior and give defendants years of extra prison time based on predictive crimes that they have not committed. I'm giving you that point. I think that's right. It says used. And I think in context she found that he used this gun via preponderance. And so why doesn't she have enough circumstantial evidence given that she's got witnesses showing who described him going into pawn shops with these items to pawn? Because, again, the record is devoid of evidence that the gun is there or facilitated. The gun is where facilitating? That the gun is facilitating these crimes. You're reading out potential. You're taking potential out of the guideline that way. Right. Well, again, but this goes back to what the Sixth Circuit has called fortress theory, right, which is that he's protecting this, that this is doing something, or if it has the potential. I would say, number one, the court does need to say, I think specifically, this is the offense, if he's pawning jewelry, the gun. Well, the offense is felon in possession of a firearm. That's the offense. And if he has the gun, you are concerned about how that gun not only, I think, actually was used, but what its potential use is. And so I really don't have any trouble with the notion of even looking to the future, given that his offense was that he wasn't supposed to have a gun in the first place. So I think as I read the case law, when we are applying this enhancement, it is for the first identification is what is the other offense? And the second is what role did the gun play or have potential to play in that offense? But there's got to be a connection between those two. Because if Mr. Binford possessed a gun. You've got burglary tools. You've got items that were reported stolen. You've got a gun. Not a hard line to draw between those dots, is it? Your Honor, with all due respect, you've just described. You may not prove the actual connection, but the guideline says potential. It doesn't say you have to prove that the gun was carried in the course of a burglary. So what I would say, Your Honor, is that respectfully what Your Honor has just described is proximity and every circuit to address this. Well, this Court's Gonzales case, granted in the drug context, points out, okay, the gun and the meth, same gym bag. End of story. I would say. Proximity does mean something. It's not valueless. It's not valueless. I agree, Your Honor. I would say that in this case there has to be some sort of identification of what is the other offense? Where was the gun? How did it facilitate it? And on this record, I think at the very least we just have a procedural matter, is we just don't have enough factual findings from the Court to uphold that enhancement. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the Court. The next case on calendar for argument is United States v. Powell.
judges: Rawlinson, Clifton, Christen